## 𝔑𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

### FURLONG v. SANFORD AND ALS.

#### March 5th, 1891.

1. FRAUD—*Rescission of contracts.*—If fraud be charged and proved, equity will set aside all transactions founded therein, whatever machinery may be employed in affecting them, and, in considering the case, will take into account all the circumstances.

2. IDEM—*Case at bar.*—A man of 79 years of age, but of sound mind and experience in business, whilst despondent at the sudden death of his wife, relinquished his rights in certain property, whereof he was fully informed, to her children by a former husband in consideration of provisions by them for his support: *held,* there was no error in refusing to rescind the contract.

Appeal from decree of circuit court of Westmoreland county, rendered September 30th, 1889, in a cause wherein John Furlong was complainant and Millard F. Sanford and others were defendants. The bill in this case was filed in June, 1889, by the appellant, alleging that he was the husband, during her life, of one Mary J. Furlong, deceased, who died suddenly and intestate on the 11th day of January, 1888, seized and possessed of large and valuable estate, both real and personal, leaving him her surviving, and three children by a former marriage, who are the appellees; that during the life of the said wife the property had been divided between her and her children, and all of the complainant's property had been conveyed to the said wife; that without warning, apparently in full health, the fatal stroke descended upon her, and she sank in her chair a lifeless corpse—a scene which saddened his heart, bewildered his mind, and made him feel for a time, at

least, indifferent to worldly interests. In these distressing circumstances, when the said complainant and bereaved husband was indisposed for business, and really incapable of giving attention to the most ordinary affairs of daily life, on the day after the funeral of his deceased wife, on the 14th of the month, he was visited by the son of the deceased, M. F. Sanford, one of the appellees—a man of education, intelligence, and a minister of the gospel, in whom he had long been accustomed to place implicit confidence—for the purpose of having an immediate settlement and division of the property of the late wife between the complainant and the children of his late wife; that this was Saturday, and on this day, because of the presence of sympathizing friends, the matter was postponed, but that on the Monday following the son-in-law and preacher returned and pressed the matter; that complainant was then equally unprepared for business of any sort; he was melancholy, depressed, and despondent; he knew nothing of the laws of property, having only the vaguest idea of laws; that he had never been in court, either as suitor or as witness, in his life; that his own means had, by inadvertency or by design, been acquired by his wife, and that his wife having died intestate, he believed himself penniless and entirely dependent at the age of seventy-nine years; that at this moment Millard Filmore Sanford called on him and made proposals to him and professions of kind feeling and sympathy, and promised to provide for him out of his mother's property, so that he should never be in real want; that, in ignorance of his own rights, he had gratefully accepted the provision made for him by his supposed benefactor, and agreed to sign, and did, on the eighteenth of the month following, the day after but one, sign and execute an agreement by which he had been greatly defrauded; that subsequently, under the pressure of circumstances, his wife's sons had modified to some degree the hard and unjust terms forced upon him · by deception and fraud, which he had still ignorantly

accepted on the 30th of the same month; that by these contrivances he had been made to give up the personal property of his wife, worth $8,000, which was his absolutely, although he did not know it, and was told by his son-in-law that he was destitute; and that he had received some real estate for life, worth very little, and some personal property of trifling value, all together not one-tenth of what he had ignorantly and by fraudulent devices been made to surrender; and prayed that these fraudulent contracts might be annulled, and he be nevertheless enabled to receive his legal rights.

The defendants demurred and answered, and in their answer they deny—and M. F. Sanford denies most emphatically, absolutely, and unequivocally—that the agreements assailed in the bill, of the 18th of January and the 30th of January, 1888, were obtained as set forth in plaintiff's bill, and sets forth the circumstances in detail under which the said agreements were executed. The plaintiff and the defendant, especially, at great length, and many others have testified, and the court, in the decree complained of and appealed from here, decided that the demurrer to the bill be overruled, and, proceeding to consider the case upon its merits, held that the charge of mistake, fraud and surprise, or undue influence, made in the bill are not sustained, and that there is no sufficient ground upon which the court can rescind the contracts, &c., prayed to be rescinded in the bill, dismissed the complainant's bill with costs, and he appealed to this court.

*John Critcher*, for the appellant.

*R. J. Washington*, and *W. A. Jones*, for the appellees.

LACY, J. (after stating the case), delivered the opinion of the court.

It is clear from the evidence in this case that, upon the

death of Mrs. M. J. Furlong, her husband and her children believed that, as all of the property in question had been her sole and separate estate, in which her husband had no interest during her life, and as there had been no issue of the marriage with Furlong, and as she had died intestate, that all of this property passed to her children, and that her husband was entitled to nothing as tenant by the curtesy, nor otherwise. It is equally clear that all the parties in interest knew that the expressed intention of the wife was to make provision for the husband, the degree and character of which was understood. It is evident that the first thought of the husband was that the sudden death of his wife had prevented the execution of her *bona fide* intention of making the will agreed on; that the Sanfords believed that their mother had intended to make this will, as she had declared she would, and had been prevented by the suddenness with which death came, which is so graphically described in the plaintiff's bill; and that they came quickly forward with an assurance that what their deceased mother had wished to do they would do voluntarily, and that Furlong gratefully accepted their supposed gifts. But it is *distinctly proved* that, before any contract was executed, other parties had intervened, and both sides had been informed that their rights were as the appellant now claims them to be—that the personal property belonged to the appellant, Furlong, and that the real estate belonged to the children; that thus fully informed of their rights, they came together and made a formal partition and division in solemn form. There is no support whatever for the pretension of the appellant that he was so simple minded that he did not know what personal property was, nor what was meant by the term "real estate." He had been a bookkeeper for many years in the city of Alexandria, and was then, and perhaps is now, the head of a mercantile firm in the town of his residence; but, if he had been even so ignorant as he pretends, his friends had taken the pains to duly enlighten him. But he claims that

he made a very unequal bargain. This, however, he was not defrauded into making, if it be so. He was seventy-nine years old, but nevertheless competent, clearly, so to contract. He was of full age, of full mental capacity, and fully informed. If no sufficient consideration appears upon the surface, we cannot, for that reason, infer deception or fraud. The reasonable presumption is that he had a motive, and that such motive appeared sufficient to him at the time. His agreement was certainly not entirely without consideration. He was nearly eighty years old, and, however healthy and vigorous, he could not reasonably expect to live a very long time. Under his agreement he retained his home and all of his surroundings, which appear to have been commodious and ample; if he had stood upon his legal rights, he was certainly homeless and houseless. What he might have considered a sufficient or an excessive concession for this, we do not know, and it is not profitable to enquire; for it is sufficient if he was informed concerning his rights, and disposed of what was his without fraud or deceitful practices. Proof of consideration is not necessary; a man acting under the influence of no mistake, fraud, or deceitful act may make a valid and binding gift of his property. If we may pause to seek a motive outside of the valuable consideration received, the fact that his dead wife wished it so, and that the sons-in-law were willing to make it so when they believed they could prevent it, may furnish the real motive. But that he was fully informed that he had rights in his wife's personal property could not be doubted if no deposition had been taken in the case, because the contract sought to be set aside on its face shows it. It is there said: "That *for and in consideration of the relinquishment by the said John Furlong of his marital rights in the personal estate of the said Mary J. Furlong, which is evidenced by his signing this agreement.*" Yet he declares that he entered into this agreement believing that he had no interest in this personalty.

If the claim set up in the bill had been sustained by the

evidence in this case, which it certainly has not been, it would have been the province of a court of equity to relieve against the fraud. The most solemn instruments, when vitiated by fraud, do not stand in the way of a court of equity when it proceeds to grant relief against frauds. In equity every transfer or conveyance of property, by what means soever it is done, is vitiated by fraud. Deeds, obligations, contracts, awards, judgments, or decrees may be the instruments to which parties may resort to cover fraud, and through which they may obtain the most unrighteous advantages; but none of such devices or instruments will be permitted by a court of equity to obstruct the requisitions of justice. If a case of fraud be. established, a court of equity will set aside all transactions founded upon it, by whatever machinery they may have been effected, and notwithstanding any contrivance by which it may have been attempted to protect them; and, in affording relief, a court of equity will take into account all the circumstances of the case, not only the act and the intention of the party, but the circumstances under which the act was done, the position of the party said to be imposed upon; his being *inops consilii;* his being in a state of bodily, and, therefore, mental weakness, and so on. The rule of the court is to interfere in all cases where the interests of justice call for and require its interference. If there be an equitable case stated by the bill, there is jurisdiction to interfere by way of injunction, if necessary, and also by way of ordering the instrument to be delivered up. *Traill* v. *Baring,* 33 L. J., ch. 527; *Loyd* v. *Clarke,* 6 Beavan, 309; *Lewellin* v. *Pace,* 1 W. R., 28; *Smith* v. *Reese River Co.,* L. R., 2 Eq., 264; Kerr, F. & M., 44, *et seq.; Bowden* v. *Johnston,* 107 U. S. S. C. R., 251; *Rea* v. *Missouri,* 17 Wall., 543; 2 Story Eq., Vol. I , sec. 109a.

We think the circuit court did not err in overruling the demurrer to the plaintiff's bill. The case therein stated was the elaboration of a case of unusual hardship and imposition

by fraudulent representations and practices.   To charge fraud is not always difficult; but to prove it, when no fraud has been practiced, is not easy.   And we concur with the judge of the circuit court in this case, that no fraud has been estab lished.   The alleged inadequacy of price, alleged as one of the grounds of fraud in this case, does not appear.   The personal property was not all given up by Furlong, but it was divided; and the real estate was also divided in the manner agreed upon by both parties, with the fullest light and all necessary information afforded to them by counsel and others. And certainly there is no such inequality amounting to fraud, which shocks the conscience and confounds the judgment of men of common sense.   The parties were competent to contract, contracted freely, without fraud, duress, or mistake, and they are mutually bound by their agreements.

We think the circuit court was, therefore, clearly right upon the merits also, and we are of opinion to affirm the decree appealed from.

DECREE AFFIRMED.